IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TREVOR UHLS<br><br>Defendant. | Case No. 4:26-cv-614 |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

For its Complaint against Defendant Trevor Uhls, the United States of America ("United States"), pursuant to the fraud injunction statute, 18 U.S.C. § 1345, and Federal Rule of Civil Procedure 65, alleges as follows:

**INTRODUCTION**

1. Defendant is engaging in an investment fraud "Ponzi" scheme that has and continues to defraud individuals throughout the United States, including multiple individuals located in the Western District of Missouri.

2. The United States seeks to prevent continuing and substantial injury to victims of this fraudulent scheme by bringing this civil action under 18 U.S.C. § 1345 to enjoin Defendant's ongoing wire fraud in violation of 18 U.S.C. § 1343.

**CAUSES OF ACTION**

3. The United States brings this civil action for injunctive relief pursuant to the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, based upon predicate violations of wire fraud.

4. The United States has probable cause to believe that the commission of wire fraud, as defined by 18 U.S.C.§ 1343, occurred and will occur in the future absent relief pursuant to 18 U.S.C. § 1345.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 18 U.S.C. § 1345 (Anti-Fraud Injunction Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C.§ 1345 (United States as plaintiff).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

7. Plaintiff is the United States of America.

8. Defendant Trevor Uhls is an individual residing in Lee's Summit, Missouri, within the Western District of Missouri, and who has formulated, directed, participated in, and controlled the fraudulent acts and practices set forth in this Complaint.

## THE FRAUDULENT SCHEME

9. Dating back to at least September 2024, Defendant Uhls has been engaged in a scheme to solicit funds from investors for fake short-term, crowdfunded, real estate deals purportedly secured by promissory notices with local construction companies.

10. Since approximately September 2024, Uhls has received through his fraudulent investment scheme wire transfers, cashier's checks, personal checks, U.S. currency, and peer-to-peer (P2P) payments totaling over $2.1 million from at least 24 individuals. Only a fraction of that total has been returned to investors.

11. Uhls has no known source of legitimate income, and a review of his financial accounts evidences only credits and deposits involving suspected fraudulently obtained investor funds or other monies that have no identifiable legitimate source.

12. According to victim investors, Uhls advertised that he was pooling capital from individual investors as short-term loans to real estate development companies needing funds to acquire land or renovate properties for resale. In exchange for their capital infusion, Uhls issued promissory notes purportedly executed by real estate company borrowers.

13. Although the format of Uhls' promissory notes has evolved over time, most fake notes provided the investment amount, the company allegedly borrowing the funds, and the repayment terms. Uhls typically sent the promissory notes to victim investors via e-mail using DocuSign.

14. The promissory note contracts guaranteed that investors were eligible to have their principal investment returned after thirty, sixty or ninety days, along with 10-15% interest. Alternatively, investors could elect to leave their funds invested and receive monthly interest payments.

15. If one declined to withdraw their funds, as several investors did, Uhls advised them that he would reinvest their principal in another crowdfunded deal. Although some investors received a complete return on their investment, the majority of investors in Uhls' Ponzi scheme received only several interest payments, if any. Multiple investors have been unable to recover any of their principal investment or accrued interest.

16. The borrower entity listed on many of Uhls' promissory notes was a small-business, general contracting services company located in Kansas City, Missouri. The co-owner of the business is related to Uhls by marriage. Uhls did not notify the business owners about the promissory notes, and the business never received any funds from Uhls or his investors. Indeed, the business has never borrowed any loans and has never crowdfunded capital. The promissory notes were fraudulently executed in the business' name by Uhls, who was neither a business employee nor authorized by the business to enter the company into business or loan agreements.

17. Uhls later switched to recording "Trevor Uhls LLC" and "Midwest Homes" as the borrowing entities on the fraudulent promissory notes with investors. Trevor Uhls LLC was incorporated with the State of Missouri on January 31, 2024. The Articles of Incorporation lists Uhls as the registered agent and sole organizer, with a principal office address at his apartment in Lee's Summit. No known business registration records exist for a Midwest Homes entity matching the business listed in the promissory notes.

18. Uhls primarily negotiated deals with victims via cellphone text messaging, which involved the transmission of interstate wires. The cellphone communications included a group chat thread called the "Inner Circle," which comprised Uhls and a group of mostly "blue collar" workers. Uhls promoted investment opportunities with his "uncle's" company to the group members. As part of his scheme to defraud, Uhls also used interstate wires to transfer and receive victim funds.

19. In or around March 2026, the United States Securities and Exchange Commission ("SEC") contacted Uhls regarding his investment deals and advised him that they were investigating potential violations of federal securities law. Uhls retained legal counsel to represent him in the investigation.

20. On June 17, 2026, agents with the Internal Revenue Service-Criminal Investigation ("IRS-CI") executed a federal search warrant for Uhls' residence in Lee's Summit, Missouri, for evidence of wire fraud and money laundering violations. Uhls was present throughout the execution of the search warrant at his home.

21. Despite the overt, ongoing investigations and action by the SEC and IRS-CI, Uhls is continuing to engage in a scheme and artifice to defraud individuals through fraudulent short-term investment schemes. These ongoing efforts include the recent attempts to defraud Victims #1, 2 and 3, as detailed below.

***Victims #1 and #2***

22. The day after IRS-CI searched Uhls' residence, Uhls contacted Victim #1 seeking a $40,000 investment.

23. Victim #1 initially met Uhls in 2025 through a mutual associate. Uhls presented himself as a successful businessman living a lavish lifestyle. On one occasion, Uhls flew Victim #1 on a private jet to Dallas, and on another occasion took Victim #1 and his son to an NCAA basketball game. During the NCAA outing, Uhls showed off his new Mercedez Benz, which he claimed to have paid for in cash. Uhls actually leased the vehicle.

24. Uhls ultimately convinced Victim #1 and his son to invest in short-term deals with a local home remodeling company, Midwest Homes, that specialized in 30-day home remodels. As noted above, there is no evidence that Midwest Homes exists.

25. Uhls represented that Victim #1 and his son would receive double their initial investment, of which 10% would be returned to them on the 7th of each month until they received their entire principal balance (equivalent to double their initial investment). In total, Victim #1 invested approximately $70,000 with Uhls and has been paid back approximately $12,000. Victim #1's son invested approximately $5,000 and has been paid back approximately $2,000.

26. Victim #1 facilitated investments between Uhls and a group of investors comprised of Victim #1's family and friends. In one deal between Uhls and Victim #1's friend, Victim #2, Uhls' claimed to be representing the a garage door service company located in Lee's Summit, MO. Uhls told Victim #2 that the business had approximately $400,000 in net payables due over 90 days and was seeking investor capital to fund its payables while it continued growing the business.

27. Victim #2 invested a reported approximately $300,000 with Uhls for a business loan deal. Victim #2 contacted Uhls after not receiving payments in accordance with their agreement. Uhls claimed he had arranged for Victim #2 to meet the owner of the business in Lee's Summit to pay Victim #2 in cash, but the owner never showed.

28. Victim #2 contacted the owner of the garage business, who claimed he was unaware Uhls was using his company name to solicit investments and that Uhls also owed him/her approximately $68,000.

***Victim #3***

29. Victim #3 was introduced to Uhls through a coworker in or around March 2026. Uhls falsely told Victim #3 that he owned a logistics company called Velocity, and that he had started it a couple years ago. Uhls does not own any logistics company.

30. A few weeks after the introduction, Uhls offered Victim #3 an investment opportunity with a private equity group in New York that owned companies in Kansas City that renovated buildings. The investments had varying timeframes and rates of return.

31. Victim #3 initially invested $30,000.00 with Uhls for two weeks for a 10% return. Victim #3 made subsequent investments with Uhls totaling approximately $500,000, including $315,000 provided to Uhls in cash in a hand-to-hand transfer. Uhls provided Victim #3 with promissory notes via text message for

some of the investments. Victim #3's most recent investments were in May 2026—*after* he was contacted by the SEC.

32. In or around June 2026, Uhls asked Victim #3 for $20,000.00 to allow him to open a $500,000 line of credit with a bank, some of which would be used to pay back Victim #3. The individual declined the request.

33. To date, Victim #3 has only received a total of $25,000.00 from Uhls. In response to questions from Victim #3 about the status of payments, Uhls has provided various excuses why the money had not arrived, including placing blame on banks and bankers. On or about the week of July 6, 2026, Uhls told Victim #3 that he would fly to New York to pick up checks for Victim #3 and deliver them to his/her house on July 14. Uhls never arrived.

***Asset Tracing***

34. A review of financial records obtained to date shows that Uhls' used most of the victim investment deposits to fund sports betting, cryptocurrency exchange transactions, jewelry purchases, and credit card payments. The credit card payments total more than $880,000 between September 2024 and December 2025. During that same period, Uhls gambled over $652,000 on sports bets and paid over $23,000 for chartered jet flights.

35. The financial records do not show any expenditures by Uhls consistent with financial investments in private equity groups, local businesses, construction, or real estate development.

**COUNT I**
**18 U.S.C. § 1345 – INJUNCTIONS AGAINST FRAUD**

36. The United States re-alleges and incorporates here the allegations in paragraphs 9 through 35 of this Verified Complaint.

37. By reason of the conduct described herein, Defendant has violated, is violating, and is about to violate 18 U.S.C. § 1343 by engaging in and facilitating a scheme and artifice to defraud and obtain money or property by means of false or fraudulent representations with the intent to defraud, and, in so doing, use interstate or foreign wire communications.

38. Upon a showing that Defendant is committing or about to commit a violation of 18 U.S.C. § 1343, the United States is entitled, under 18 U.S.C. § 1345, to seek a preliminary injunction, and a permanent injunction restraining all future fraudulent conduct. The Court may also grant such other relief it deems just and proper to prevent a continuing and substantial injury to victims of the fraud scheme.

39. As a result of the foregoing, the Court should enjoin Defendant's conduct under 18 U.S.C. § 1345.

**DEMAND FOR RELIEF**

**THEREFORE**, the United States requests judgment in its favor and against defendant, including the following relief:

(a) That the Court issue an order, pursuant to 18 U.S.C. § 1345, pending a hearing and determination of the United States' application for a preliminary injunction, that defendant, his agents, officers, and employees, and all other persons

or entities in active concert or participation with him, including all banking and other financial institutions at which he does business, and all other corporations over which the defendant exercised control, are preliminarily restrained from:

1. committing wire fraud, as defined by 18 U.S.C. § 1343, or otherwise accepting any money by false or fraudulent representations;
2. soliciting, receiving, or accepting any funds from any person for the purpose of purchasing, selling or investing in any securities, promissory notes, real estate development deals, debt instruments, or investment contracts;
3. maintaining and doing business as "Trevor Uhls LLC," "Velocity" or "Midwest Homes";
4. alienating, withdrawing, transferring, removing, dissipating or otherwise disposing of, in any manner, any moneys or sums presently deposited, or held on behalf of the defendant by any financial institution, trust fund, or other financial agency, public or private, that are proceeds from false, fictitious, or fraudulent representations made by the defendant, or any moneys of an equivalent value to those taken through false, fictitious, or fraudulent representations;
5. from alienating, withdrawing, transferring, removing, dissipating or otherwise disposing of, in any manner, assets, real or personal, in which defendant acquired an interest after September 1, 2024;

(b) And that the Court further order the defendant his agents, employees, attorneys, and all persons acting in concert and participation with him, including all banking and other financial institutions at which he does business, and all other corporations over which the defendant exercise control:

1. To preserve all business, financial and accounting records, including bank records, which detail defendant's investment schemes and disposition of any funds which directly or indirectly arose from the payment of money to the defendant as part of these schemes;
2. To provide reasonable assistance in implementing the terms of the order and take no action to frustrate the implementation of the order

(c) And that the Court order defendant to provide to the Plaintiff the following:

1. a list of all post office boxes or other locations at which mail addressed to defendant is received;
2. a list of all financial institutions, including but not limited to banks and brokerage houses, at which are or have been maintained in the past four years savings, checking, or any other kind of account or other safe deposit box into which money has been deposited in defendant's name or in the names of their agents, employees, officers, persons acting in concert with them, or any business names under which he operates, together with the number or other designation of each such account or box;

3. a list of all financial institutions, including but not limited to, banks and brokerage houses, at which are or have been maintained in the past four years savings, checking, or any other kind of account or other safe deposit box into which monies received in response to any of the activities described in Plaintiff's complaint, or previous activities in which similar third-party investment funds have been deposited, together with the number of such box or other designation of each such account or box; and

4. the names, addresses, and telephone numbers of any individuals who have received remuneration of any kind for assisting in record-keeping, bookkeeping, accounting, brokering, or financial, investment, or tax advice or consultation for any defendant in the past four years.

5. an accounting of the assets in which the defendant acquired an interest after January 1, 2024, within ten calendar days, and to provide on a monthly basis, commencing forthwith, suitable reports detailing his financial condition;

6. To complete a Financial Disclosure Statement form provided to the defendant by the plaintiff withing ten calendar days;

(d) That the Court issue a preliminary injunction, pursuant to 18 U.S.C. § 1345, on the same basis and to the same effect;

(e) That the Court issue a permanent injunction, pursuant to 18 U.S.C. § 1345, on the same basis and to the same effect;

(f) All such further relief as may be just and proper.

Respectfully submitted,

R. Matthew Price
United States Attorney

By: */s/ John Constance*
John Constance
Assistant United States Attorney
400 E. 9th Street, Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-4275
E-mail: John.Constance@usdoj.gov

## VERIFICATION

I, Special Agent Michael Colwell, hereby verify and declare under penalty of perjury that I am a Special Agent of the Internal Revenue Service-Criminal Investigation, that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs 9 through 35 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Internal Revenue Service-Criminal Investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: July 15, 2026

*/s/ Michael Colwell*
Michael Colwell
Special Agent
Internal Revenue Service-Criminal
Investigation