**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

UNITED STATES OF AMERICA,

            Plaintiff,

v.

TREVOR UHLS,

            Defendant.

Case No. 26-00614-01-CV-W-SRB

**PLAINTIFF'S EMERGENCY MOTION FOR ORDER TO SHOW CAUSE
AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, United States of America (the "government") by and through undersigned counsel, respectfully moves this Court for an order to show cause why Defendant Trevor Uhls should not be held in contempt of the Court's July 20, 2026, Temporary Restraining Order (the "TRO") in light of multiple violations of the TRO committed by Uhls over the past approximately 96 hours. The government requests a hearing in connection with this motion at the Court's earliest availability.

**BACKGROUND**

On July 16, 2026, the United States filed a Complaint and Motion for Preliminary Injunction with this Court pursuant to the Fraud Injunction Act, 18 U.S.C. § 1345, alleging that Trevor Uhls is engaging in a Ponzi scheme to defraud investors [ECF Nos. 1, 3]. On July 17, 2026, the United States moved *ex parte* for an emergency Temporary Restraining Order against Uhls on the basis that, after the government filed its complaint, Uhls contacted a victim mentioned in the complaint demanding to know whether he/she had spoken with the Securities and Exchange Commission ("SEC") or Internal Revenue Service-Criminal Investigation ("IRS-CI"). [ECF Nos.

7]. Uhls told the victim that he had his/her money but now "wasn't going to receive it because everything had to go through the lawyers" following the filing of the complaint. [ECF No. 7.1, Affidavit of SA Whitten].

On July 20, 2026, this Court issued a TRO against Uhls ordering him to, among other things, stop: committing wire fraud; soliciting, receiving, or accepting any funds from investors; contacting people that he had previously asked for money for investments; disposing of any remaining proceeds of his investment fraud. [ECF No. 9].

## LEGAL STANDARD

It is firmly established that "the power to punish for contempt is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Injunctions, including temporary restraining orders, are typically enforced through the court's civil contempt power. *See Trump v. CASA, Inc.*, 606 U.S. 831, 851 n.11 (2025) ("Under 'traditional principles of equity practice,' courts may 'impos[e] civil contempt sanctions to coerce [a] defendant into compliance with an injunction.") (quoting *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019)). A district court may impose civil contempt sanctions for one of two purposes: "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303 (1947). A fine or incarceration may be used in contempt proceedings to coerce the defendant into complying with the court's orders. *See Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). *Cf. Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 77 (1st Cir. 2002) (Once proven, the court enjoys "wide discretion in its choice of sanctions.")

The same actions that amount to civil contempt can also warrant a finding of criminal contempt. *Hubbard v. Fleet Mortg. Co.*, 810 F.2d 778, 781 (8th Cir. 1987). Penalties for criminal

contempt, however, are used to vindicate the court's authority. *Id.* at 781–82 (citing *United Mine Workers*, 330 U.S. at 302–04). Courts generally should first apply coercive pressure by means of civil contempt before resorting to more drastic criminal sanctions if the disobedience continues. *Yates v. United States*, 355 U.S. 66, 74 (1957).

If a plaintiff believes a defendant has failed to comply with a court's order, it can move the court to issue an order to show cause why the defendant should not be held in civil contempt and be sanctioned. *See Int' Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (Civil contempt sanctions "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."); *Thomason v. Russell Corp.,* 132 F.3d 632, 634 n. 4 (11th Cir. 1998) (explaining that the proper process to enforce an injunction is to move the court to issue an order to show cause).

At a hearing on the motion, the plaintiff has the burden of proving by clear and convincing evidence that the defendant failed to comply with the prior order. *See Chicago Truck Drivers*, 207 F.3d at 505 (stating that clear and convincing evidence is the standard for a prima facie showing of a violation). If the moving party meets his burden, the burden then shifts to the alleged contemnor "to show an inability to comply." *Id.*

## ARGUMENT

This Court's TRO enjoined and restrained Uhls from:

(4)     contacting any persons or entities from whom Defendant previously solicited, received, or accepted any funds for the purpose of purchasing, selling or investing in any securities, promissory notes, real estate development deals, debt instruments, or investment contracts;

(5)     alienating, withdrawing, transferring, removing, dissipating or otherwise disposing of, in any manner, any moneys or sums presently deposited, or held on behalf of the Defendant by any financial institution, trust fund, or other financial agency, public or private, that are proceeds from false, fictitious, or fraudulent representations made by the Defendant, or any moneys of an equivalent value to

those taken through false, fictitious, or fraudulent representations

[ECF No. 9].

Uhls has violated the above provision of this Court's TRO by contacting multiple persons from whom he previously solicited investments with promises to repay investment funds. As set forth in the accompanying affidavit of IRS-CI Special Agent Jerry Whitten, attached as Exhibit A, the government provided a copy of the Court's TRO to Uhls' counsel at 2:53pm on July 20. Less than 4 hours later, at 6:20pm on July 20, Uhls contacted Victim #4 with a promise to repay his/her investment funds via peer-to-peer payment service Zelle. Uhls then provided a variety of excuses why he could not complete the transfer. On July 22, Uhls contacted Victim #4 via telephone and threatened to never repay Victim #4 because he/she had invested cash with Uhls without any accompanying written agreement. Uhls also contacted Victims #6 and #7 via telephone on July 21, after entry of the Court's TRO. He told them both that he had met with the SEC and proved to the agency that he had sufficient funds to pay back all investors.

Uhls' contacts and attempted contacts with Victims #4, 6 and 7 directly violate the terms of the TRO prohibiting Uhls from contacting individuals whom he has previously solicited and received investment funds. On this basis, the United States respectfully requests that the Court order Uhls to show cause why he should not be adjudged in contempt and sanctioned.

*     *     *

**CONCLUSION**

The United States respectfully requests that this Court enter an order requiring Trevor Uhls to show cause why he should not be adjudged in contempt and sanctioned for violating the Court's TRO. Given the ongoing victimization of innocent investors by Uhls, the government respectfully requests an emergency determination on this matter.

Respectfully submitted,

R. Matthew Price
United States Attorney

By  */s/ John C. Constance*
John C. Constance
Assistant United States Attorney
Fraud and Corruption Unit
Charles Evans Whittaker Courthouse
400 E. 9th Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on July 24th, 2026 to the CM-ECF system of the U.S. District Court for the Western District of Missouri. A copy of the foregoing will also be provided to Trevor Uhls through his counsel, Gregory Watt, via email.

*/s/ John C. Constance*
John C. Constance
Assistant United States Attorney

6